In re FIRST ALLIANCE MORTGAGE COMPANY, a California corporation; First Alliance Corporation, a Delaware corporation; First Alliance Mortgage Company, a Minnesota corporation; and First Alliance Portfolio Services, a Nevada Corporation, Debtors.

Federal Trade Commission, Plaintiff,

v.

First Alliance Mortgage Company et al., Defendants.

State of Arizona; State of California; State of Florida; State of Illinois; Commonwealth of Massachusetts; and State of New York, Plaintiffs,

v.

First Alliance Mortgage Company et al., Defendants.

Velda Durney; Mary Ryan; Lucrecia Wilder; Carol and Henry Hong; Ida Mae Forrest; and AARP, Plaintiffs,

v.

First Alliance Mortgage Company et al., Defendants.

No. SA CV 00–1174 DOC (EEx), SA CV 01–139 DOC, SA CV 01–306 DOC. Bankruptcy Nos. SA 00–12370 LR to SA 01–12373 LR. Adversary No. SA 00–1659 LR.

United States District Court, C.D. California.

April 30, 2001.

---

William N. Lobel, Irell & Manella, Newport Beach, CA, David M. Stern, Klee, Tuchin, Bogdanoff & Stern, Los Angeles, CA, for Debtor.

Barbara Y. K. Chun, Kenneth H. Abbe, Federal Trade Commission, Los Angeles, CA, Julie K. Brof, Federal Trade Commission, Seattle, WA, Jeanne M. Crouse, Bonnie S. Kartzman, Jeanne–Marie S. Raymond, Federal Trade Commission, Washington, DC, David B. Zlotnick, David B. Zlotnick Law Offices, San Diego, CA, for Plaintiffs.

*ORDER* GRANTING IN PART MOTIONS TO WITHDRAW THE REFERENCE BROUGHT BY THE FEDERAL TRADE COMMISSION; ARIZONA, CALIFORNIA, FLORIDA, ILLINOIS, MASSACHUSETTS, AND NEW YORK; AND VELDA DURNEY, MARY RYAN, LUCRECIA WILDER, CAROL AND HENRY HONG, IDA MAE FORREST, AND AARP

CARTER, District Judge.

First Alliance Mortgage Company, a California Corporation; First Alliance

Corporation, a Delaware corporation; First Alliance Mortgage Company, a Minnesota corporation; and First Alliance Portfolio Services, a Nevada corporation (collectively "First Alliance") are the debtors-in-possession in a pending Chapter 11 bankruptcy case in this district. Several governmental and private entities who are proceeding against First Alliance on claims relating to First Alliance's lending practices have moved the Court to withdraw the reference to the bankruptcy court as to various proceedings. After consideration of the papers filed regarding the motions and oral argument on January 8, 2001 and April 16, 2001, the Court GRANTS IN PART the motions.

## I.

## BACKGROUND

First Alliance Mortgage Company of California, First Alliance Corporation of Delaware, First Alliance Mortgage Company of Minnesota, and First Alliance Portfolio Services of Nevada (collectively, "First Alliance")[1] have been in the business of subprime mortgage lending since 1971. First Alliance's customers generally were borrowers who would have had difficulty obtaining loans from conventional sources because of poor credit ratings or insufficient credit histories. The loans, many of which were refinancings by homeowners who had developed significant equity in their homes, typically were secured by the borrowers' first mortgages. As of 1999, First Alliance or affiliated entities were licensed to operate in eighteen states and the District of Columbia and serviced nearly $900 million in loans.

On March 23, 2000, First Alliance filed a voluntary petition for Chapter 11 bankruptcy because of the costs associated with the growing number of lawsuits filed against it.[2] This petition triggered the consolidation of most of the pending lawsuits into the bankruptcy proceeding. To this Court's knowledge, all private lawsuits brought by individuals against First Alliance concerning its lending practices are now under the umbrella of the bankruptcy proceeding. The consolidation also included the claims of various governmental units. Six states—Arizona, California, Florida, Illinois, Massachusetts, and New York—filed proofs of claim in the bankruptcy proceeding, asserting on behalf of their citizens that First Alliance has violated the States' consumer protection and lending laws. Three of these states—Florida, Illinois, and Massachusetts—also have separate actions pending against First Alliance in their respective state courts.[3] The Federal Trade Commission ("FTC") also filed both a proof of claim in the bankruptcy proceeding and a separate action against First Alliance, asserting that First Alliance has violated federal lending laws. In a separate order, this Court held that the four separate actions brought by governmental units may proceed outside the bankruptcy proceeding.[4]

---

1. The parties sometimes refer to First Alliance as "FAMCO."

2. The FTC notes that First Alliance filed for bankruptcy just days after an article in the *New York Times* and a segment on the television program "20/20" exposed the company's allegedly deceptive practices and highlighted the number of lawsuits that have been filed against First Alliance in the past several years.

3. Massachusetts and Illinois had filed their separate actions pre-petition. Florida filed its action post-petition. Florida named various First Alliance officers and directors as defendants in addition to First Alliance.

4. The Court made this ruling in an order in case number SA CV 00–1231 DOC on April 19, 2001. The Court held that the four separate governmental actions fall within the regulatory and police powers exception to the automatic stay. *See* 11 U.S.C. § 362(b)(4).

Currently before the Court are several motions to withdraw the reference as to various aspects of the proceedings in the bankruptcy court. These motions were filed and briefed before this Court ruled on whether the four separate governmental actions may proceed outside the bankruptcy proceeding. Some of these motions are brought by private entities and some are brought by governmental entities. The proceedings at issue on these motions are described more fully below.

## A. Proceedings Involving Governmental Claims

As noted, both the federal government, through the FTC, and three states have filed both proofs of claim in the bankruptcy proceeding and separate lawsuits against First Alliance. Three other states have not filed separate lawsuits, but have filed proofs of claim.

### 1. The FTC, Florida, Illinois, and Massachusetts

The FTC, Florida, Illinois, and Massachusetts are the governmental entities that have filed both separate lawsuits and proofs of claim in the bankruptcy proceeding.

Pre-petition, Massachusetts and Illinois had sued First Alliance in their respective state courts. After the petition date, Massachusetts and Illinois filed proofs of claims in the bankruptcy proceeding. Florida also filed a proof of claim and then filed a separate action against First Alliance and some of its officers and directors in Florida state court. Florida, Illinois, and Massachusetts allege that First Alliance has violated state consumer protection and lending laws, some of which are similar to each other and some of which are not.

The FTC filed its proof of claim on September 19, 2000. It attached a short explanation to its proof of claim, stating:

Commission staff have been conducting an investigation of lending practices of First Alliance Mortgage Company, a California corporation. Although the Commission has not at this time made a determination that law violations have occurred, it is possible that such a determination may be made and that redress to borrowers or other equitable relief, including but not limited to, rescission of contracts, the refund of monies paid, and disgorgement of ill-gotten gains, may be appropriate under the FTC Act.

Accordingly, the Commission is filing this proof of claim for an indeterminate amount.

Mot. to Withdraw, Ex. 1 at 3. Soon after filing this proof of claim, the FTC determined that it had enough information to file suit against First Alliance. It filed a lawsuit against First Alliance in this Court, the federal district court, on October 3, 2000. This suit alleges that First Alliance committed numerous violations of the Federal Trade Commission Act (FTC Act), 15 U.S.C. §§ 41–58, and the Truth in Lending Act (TILA)'s implementing Regulation Z, 12 C.F.R § 226.

After this separate suit was filed, First Alliance filed an adversary proceeding seeking to enjoin governmental entities

---

The Court also held that a discretionary injunction against the actions under 11 U.S.C. § 105 was inappropriate. First Alliance had requested a § 105 injunction in an adversary proceeding in the bankruptcy court. After it filed the adversary proceeding, it also moved for preliminary, 180–day § 105 injunction, which was granted by the bankruptcy court. This Court reversed that injunction on appeal and also held that a "permanent" § 105 injunction, meaning until the end of the bankruptcy proceeding, could not be justified on the facts of this case.

that had filed proofs of claim, specifically the FTC, Florida, Illinois, and Massachusetts, from prosecuting any suit outside the bankruptcy proceeding. The FTC then filed a motion to withdraw the reference, seeking to withdraw its proof of claim and, in so far as it related to the FTC, the adversary proceeding seeking a stay. On First Alliance's motion, the bankruptcy court then entered a preliminary injunction, preliminarily enjoining the governmental units from prosecuting their separate action for 180 days. The governmental units appealed this ruling. After this appeal was filed, but before it had been briefed, this Court heard argument on the FTC's motion to withdraw the reference. The Court then took the matter under submission pending the resolution of the appeal, which was also assigned to this Court for determination. Also while the appeal was pending, Florida, Illinois, and Massachusetts moved to withdraw the reference as to their proofs of claim and also as to First Alliance's adversary proceeding against them seeking an injunction. After hearing argument on the appeal, but prior to issuing its final ruling, the Court heard argument on this motion.

On April 19, 2001, this Court ruled on the appeal, reversing the bankruptcy court. Thus, the separate actions brought by the FTC, Florida, Illinois, and Massachusetts are no longer stayed and may proceed. This Court also directed the bankruptcy court to enter an order dismissing the adversary proceeding that sought a stay. Thus, in so far as the motions to withdraw the reference relate to that adversary proceeding, they are moot.

The appeal did not resolve, however, whether the Court should withdraw the reference as to the proofs of claim filed by the FTC, Florida, Illinois, and Massachusetts. After oral argument on the appeal, First Alliance filed a supplementary brief on the States' pending motion to withdraw the reference. In this brief, it indicated that it agreed that, if this Court reversed the bankruptcy court on the appeal, the reference should be withdrawn as to all the governmental proofs of claim. Resp. of Related Debtors, filed Apr. 13, 2001, at 8:1–3. It affirmed this position at oral argument on April 16, 2001.

### 2. Arizona, California, and New York

Arizona, California, and New York have also filed proofs of claim in the bankruptcy proceeding. However, while they have initiated administrative investigations into First Alliance's lending practices, none of them have initiated actual lawsuits against First Alliance, either pre- or post-petition. Thus, as to these states, the proofs of claim represent the primary vehicle through which First Alliance's liability to these states will be determined. Like Florida, Illinois, and Massachusetts, these states allege that First Alliance has violated various consumer protection and lending laws. Again, some of these state claims are similar to the FTC's federal claims, and some are not.

First Alliance's acquiescence to the withdrawal of the other governmental proofs of claim extends to the proofs of claim of these three states.

### B. Proceedings Involving Private Claims

In the bankruptcy proceeding, there are three types of private claims asserted on behalf of borrowers and alleging that First Alliance's lending practices were predatory and illegal. There are also other private claims relating to other matters.

### 1. Purported Class Action Plaintiffs

Pre-petition, a purported class action consisting of borrower plaintiffs was commenced in federal district court in New Jersey. After First Alliance filed for bankruptcy, this group of litigants prosecuted its action in the bankruptcy proceeding. Recently, the bankruptcy court denied their motion for class certification and sustained First Alliance's objection to the class claims. This group of litigants has not filed a motion to withdraw the reference.

### 2. The "California Six" Individual Borrowers and AARP

Pre-petition, six residents of California who had loans through First Alliance filed suit against First Alliance in California state court. These individuals are Velda Durney, Mary Ryan, Lucrecia Wilder, Carol and Henry Hong, and Ida Mae Forrest. The first of these suits was filed in 1996, four years prior to First Alliance's bankruptcy filing. The suits allege various state law torts and other state law claims, including elder abuse and violation of California's Business & Professions Code § 17200. The individuals seek to recover damages in their individual capacities. In addition, on the § 17200 claims, the individuals seek, as private attorneys general, to recover disgorgement on behalf of all First Alliance borrowers nationwide.

AARP first joined one of these suits and then filed its own suit in 1998. It sues only as a purported private attorney general, seeking disgorgement under § 17200 on behalf of all First Alliance borrowers nationwide.

After First Alliance filed for bankruptcy, these six individuals and AARP filed proofs of claim in the bankruptcy proceeding. From that point on, they have been litigating their claims against First Alliance in the bankruptcy proceeding.

Recently, the bankruptcy court sustained First Alliance's objections to the claims of the California six and AARP in so far as they seek to recover, as private attorneys general, disgorgement on behalf of First Alliance borrowers nationwide. As this was AARP's only claim, this decision ends AARP's claim. However, the California six may still proceed, on both their § 17200 claims and other state law claims, in so far as they seek damages on their own behalf, in their individual capacities only.

Just prior to the bankruptcy court ruling on First Alliance's objections to their private attorney general claims, the California six and AARP filed a motion to withdraw the reference as to their proofs of claim. First Alliance asserts that the motion should be denied as to the private attorney general aspects of the claims because, unless and until AARP and the California six prevail on an appeal of the bankruptcy court's ruling, there is nothing to withdraw on the claims in this capacity. As to the individual aspect of the California six's claims, First Alliance takes the position that the reference should not be withdrawn because when it proposes its plan of reorganization, which is due within the next 60 days, it will propose a method of dealing with these claims, possibly including settlement. It states that whether the reference should be withdrawn should be considered after it has a chance to address the claims through its plan.

### 3. The Other Individual Borrowers

In addition to the California six, approximately 2,000 individual borrowers have filed proofs of claim in the bankruptcy court. These claimants seek to recover only in their individual capacities. On behalf of these borrowers, the official borrowers' committee has joined in the pend-

ing motions to withdraw the reference, and has requested that the reference be withdrawn as to all these proofs of claim. As for the California six, First Alliance takes the position that withdrawal of these proofs of claim should be considered only after it first proposes a method of treating the claims in its proposed plan of reorganization.

#### 4. The Rest of the Bankruptcy Case

In a "joinder" filed only seven days prior to the hearing on the pending motions to withdraw the reference, the official borrowers committee took the position that the reference should be withdrawn as to the entire bankruptcy case, which includes matters relating to trade creditors and litigation between First Alliance and its insurers. First Alliance opposes this request on the grounds that no cause has been established for withdrawing any matters other than the issues relating to borrowers' claims against First Alliance for improper lending practices. It argues that while such issues are a large part of the bankruptcy proceeding, they are not the only affairs at issue.

## II.

### DISCUSSION

As described above, the Court's ruling on the appeal had the indirect effect of substantially narrowing the issues needing resolution on the pending motions. The requests of the FTC, Florida, Illinois, and Massachusetts to withdraw the reference as to First Alliance's adversary proceeding against them are moot, as the Court's order on the appeal resolved that matter completely. Also, given that the FTC's substantive action against First Alliance

will be proceeding as a regular civil case in this Court, the parties are now largely in agreement as to what other matters should be withdrawn. Primarily, it is whether to withdraw the reference as to the private, individual borrower claims that is at issue.

### A. Legal Standard

■■■ Responding to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress enacted a new bankruptcy code. Pertinent here are three facets of the new code. First, district courts, rather than bankruptcy courts, have original jurisdiction over all bankruptcy matters. Second, the district courts may automatically "refer" all bankruptcy matters to the bankruptcy court. The Central District of California has done this. *See* Central Dist. General Order No. 266. Third, 28 U.S.C. § 157(d) provides a mechanism whereby matters pending in a bankruptcy court may be transferred to the district court.

■■■ A transfer to the district court is accomplished by "withdrawing" the "reference." A litigant who believes that a certain proceeding or portion of a proceeding pending in the bankruptcy court should be litigated in the district court may make such a motion.[5] Such a motion is heard by the district court. Fed. R.Bankr.5011(a). Most requests for withdrawal are governed by the so-called permissive withdrawal provision of § 157(d), which provides that the reference may be withdrawn in the exercise of the district court's discretion "for cause shown." "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the

---

5. The district court also may withdraw the reference on its own motion. 28 U.S.C. § 157(d).

parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms v. International Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir.1997). Withdrawal of the reference is mandatory for proceedings that require consideration of both bankruptcy law and other, non-bankruptcy federal law that affects interstate commerce. 28 U.S.C. § 157(d). The burden of persuasion is on the party seeking withdrawal. *In re Homeland Stores, Inc.*, 204 B.R. 427, 430 (D.Del.1997).[6]

## B. Withdrawal as to Proceedings Involving Governmental Claims

■ As indicated, the motions to withdraw are moot in so far as they related to First Alliance's adversary proceeding seeking a § 105 injunction. In so far as the motions relate to other matters, given that the FTC's substantive action will be determined before this Court, as a matter of efficiency and judicial economy it makes sense for the other aspects of the bankruptcy proceeding that also concern First Alliance's lending practices to be resolved by this Court. On these grounds, the parties agree—as does the Court—that the

reference should be withdrawn as to the proofs of claim filed by all the governmental entities, namely the FTC, Arizona, California, Florida, Illinois, Massachusetts, and New York.[7] This request is GRANTED.

## C. Withdrawal as to Proceedings Involving Private Claims

Thus, remaining to be determined is whether the Court should withdraw the reference as to any of the private claims against First Alliance.

### 1. The Entire Bankruptcy Case

■ Aside from the fact that it raised the request in a "joinder" filed only one week before the hearing on these motions, rather than a noticed motion, the official borrowers' committee has not established "cause" to withdraw the reference as to the entire bankruptcy proceeding. There are several matters in the bankruptcy court that do not concern the facts of how First Alliance made loans to individual borrowers. For example, trade creditors have claims and there is ongoing litigation between First Alliance and its insurer. Most of these matters are core bankruptcy matters and no information has been pre-

---

**6.** A request by a party for either mandatory or permissive withdrawal must be "timely." 28 U.S.C. § 157(d). A motion to withdraw the reference "is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding." *Security Farms v. International Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1007 n. 3 (9th Cir.1997) (internal quotation marks and citation omitted). The linchpin of withdrawal in this case, in this Court's view, is that the FTC's substantive action is proceeding before this Court. This action was filed this past fall and was stayed until this Court's recent ruling on the appeal. Therefore, all the currently pending motions to withdraw the reference are timely.

**7.** Because the FTC, Florida, Illinois, and Massachusetts have pending separate actions

against First Alliance, First Alliance's actual liability, if any, can be determined in the separate actions, rather than on the proofs of claim. However, as counsel for Illinois indicated at oral argument, withdrawing the reference as to the proofs of claim will allow for greater coordination between these states and the FTC.

The FTC and the States assert that the reference should be withdrawn as to their proofs of claim under the mandatory withdrawal provision of 28 U.S.C. § 157(d). The Court need not resolve whether mandatory withdrawal applies to the proofs of claim, because the efficiency and judicial economy concerns present here are sufficient to justify permissive withdrawal.

sented to the Court that suggests that these matters are not best handled by the bankruptcy court or that these matters are related to the claims regarding First Alliance's lending practices. Therefore, this request is DENIED

### 2. Purported Class Action Plaintiffs

As indicated above, the purported class action plaintiffs have not moved to withdraw the reference. Further, as discussed in more detail below, as the bankruptcy court recently sustained First Alliance's objection to their claim, withdrawal would be inappropriate.

### 3. The California Six, AARP, and the Other Individual Borrowers

■ As to the proof of claim filed by AARP and in so far as the proofs of claim filed by the California six assert claims as purported private attorneys general, the bankruptcy court's recent ruling leaves nothing to withdraw. A motion to withdraw the reference is not a substitute for an appeal. Both the parties and the Court benefit from the orderly briefing process of an appeal, and the statutes setting forth procedures for appeals from the bankruptcy court would be largely meaningless if a motion to withdraw the reference could be used instead. The California six and AARP may appeal the bankruptcy court's ruling, and, if they prevail on appeal, the Court could consider withdrawing the reference at that time.

■ Thus, remaining for decision are the proofs of claim of the California six in their individual capacities and also the claims of the approximately 2,000 other individual borrowers who filed proofs of claim in the bankruptcy proceeding.

Stripped of being able to sue as purported private attorneys general for disgorgement, the California six are situated no differently than the other individual borrowers. Efficiency and judicial economy suggest that all individual borrower claims should be treated in the same way. Thus, it appears that if the reference is withdrawn as to the six, it should be withdrawn as to all the individual borrowers' proofs of claim.

Efficiency and judicial economy suggest that the individual borrower claims should be resolved by the Court handling the governmental claims. The same types of facts will underlie the claims. One of the main concerns raised by First Alliance on the appeal was that similarly situated individuals should be treated similarly. This Court held that this concern did not outweigh the right of the governmental units to pursue their separate actions in part because it seemed to this Court that many of these concerns could be addressed through the parties and courts working together to structure appropriate relief. This Court is thus not unmindful of the concern, and having the court that is determining liability in the FTC action and overseeing the States' proofs of claims[8] involved in determining the individual borrowers' claims will help to ensure that there are no double recoveries and that similarly situated individuals are treated similarly when appropriate. Further, as discussed at oral argument, counsel for the individual borrowers has been engaged in this litigation for many years and has engaged in a significant amount of discovery work. It would be efficient and beneficial for all for these attorneys to work with the attorneys for the governmental units.

8. While Florida, Illinois, and Massachusetts may now proceed with their separate actions, they all indicated at oral argument that they would work closely with each other, the other states, and with the FTC.

First Alliance's proposal, which is that the Court wait to consider withdrawing the reference as to these claims until after First Alliance has a try at resolving them through the plan process, seems to be efficient only in that it might get the claims resolved more quickly. It does not seem to promote judicial economy and it seems to run counter to the idea of consolidating similar litigation as much as possible.

Thus, the Court holds that permissive withdrawal of the reference for the approximately 2,000 individual borrowers' claims is warranted because of efficiency and judicial economy.[9]

### III.

### CONCLUSION

Given that the FTC's substantive action against First Alliance is proceeding in this Court, efficiency and judicial economy will be best served by withdrawing the reference as to some proceedings. Therefore, the Court GRANTS IN PART the FTC's motion to withdraw the reference, GRANTS IN PART the States' motion, and GRANTS IN PART the motion brought by the six individuals and AARP. The Court also grants the official borrowers committee's request that the reference be withdrawn as to the approximately 2,000 individual borrowers.

The FTC and the States' motions are DENIED AS MOOT as to First Alliance's adversary proceeding against them, because the Court's order on the appeal of the bankruptcy court's stay order directed the bankruptcy court to dismiss that proceeding. The motion brought by the six

individuals and AARP is DENIED in so far as it relates to AARP's claim and the individuals' § 17200 claims in their capacities as private attorneys general.[10]

Thus, the following matters are hereby withdrawn from the bankruptcy court: (1) the proof of claim filed by the FTC; (2) the proofs of claim filed by Arizona, California, Florida, Illinois, Massachusetts, and New York; and (3) the proofs of claim of the approximately 2,000 individual borrowers, but not in so far as the California six seek to sue as private attorneys general. The Court intends to oversee these matters to the point of determining liability. It intends to return the matters to the bankruptcy court for prioritization and allowance or disallowance.

The Court sets a status conference in all these matters for May 21, 2001 at 8:30 a.m.

IT IS SO ORDERED.

---

9. Because it reaches this conclusion as a matter of permissive withdrawal, the Court need not address the contentions of the California six and AARP that mandatory withdrawal applies or that older abuse claims constitute personal injury claims that must be heard by

the district court. *See* 28 U.S.C. § 157(b)(5) (providing that personal injury actions must be determined by the district court).

10. This request may be renewed if the bankruptcy court's decision is reversed on appeal.